IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JENNIFER SLAPAK, as administrator and personal representative, and individually as surviving spouse of James Slapak, deceased,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 16-cv-00762-JPG-SCW |

**DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFF'S FAILURE TO EXHAUST SURVIVAL CLAIMS BEFORE COMMENCING SUIT AND MEMORANDUM IN SUPPORT**

COMES NOW Defendant the United States of America, by its attorneys, Donald S. Boyce, United States Attorney for the Southern District of Illinois, and Nicholas J. Biersbach, Assistant United States Attorney, and for its Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Survival Claims Before Commencing Suit and Memorandum in Support, states as follows:

**PROCEDURAL BACKGROUND**

Plaintiff, Jennifer Slapak, as administrator and personal representative, and individually as surviving spouse of James Slapak, deceased, commenced this action on July 7, 2016. (*See* Doc. 1). Thereafter, on September 13, 2016, Plaintiff filed a First Amended Complaint. (*See* Doc. 11). In the First Amended Complaint, Plaintiff brought a Federal Tort Claims Act ("FTCA") action in which she asserted survival and wrongful death claims against the United States. In support of her claims, Plaintiff alleged the decedent, James Slapak, underwent hip replacement surgery on February 1, 2013. (*See id.* at p. 1, ¶ 3). Plaintiff further alleged that, in February and March 2013, Mr. Slapak sought care from Patrick Riley, M.D., an employee of Christopher Rural Health Planning Corporation/Rea Clinic – DuQuoin. (*See id.* at p. 2, ¶¶ 5-6; p. 6, ¶ 23; p. 8, ¶ 32). According to Plaintiff, Mr. Slapak's hip replacement surgery placed him at an increased risk for a pulmonary embolism ("PE"). (*See id.*

at p. 2, ¶ 7). Plaintiff alleged Dr. Riley breached the standard of care owed to Mr. Slapak by failing to observe him for signs and symptoms of PE and by failing to take other required medical actions. (*See id.* at p. 3, ¶ 9). Plaintiff further alleged Mr. Slapak suffered a PE because of the aforementioned breach of the standard of care, and the PE caused Mr. Slapak's death on March 26, 2013. (*See id.* at p. 3, ¶ 10; p. 4, ¶ 14; p. 6, ¶ 28).

The Complaint identified the United States of America as the Defendant and contained the following four Counts: (1) Federal Tort Claims Act/Survival Act with a heading that lists Dr. Patrick L. Riley; (2) Federal Tort Claims Act/Wrongful Death Act with a heading that lists Dr. Patrick L. Riley; (3) Federal Tort Claims Act/Survival Act with a heading that lists Christopher Rural Health Planning Corporation/REA Clinic – DuQuoin; and (4) Federal Tort Claims Act/Wrongful Death Act with a heading that lists Christopher Rural Health Planning Corporation/REA Clinic – DuQuoin. (*See* Doc. 11). At all relevant times, Christopher Greater Area Rural Health Planning Corporation was deemed eligible for Federal Tort Claims Act malpractice coverage. (*See* Doc. 15-1 at ¶ 2). Dr. Riley was an employee of Christopher Greater Area Rural Health Planning Corporation during the relevant period. (*See id.* at ¶ 3).

On November 14, 2016, the United States moved to dismiss the First Amended Complaint, or in the alternative, for summary judgment. (*See* Doc. 15). As one ground for dismissal of the Complaint, the United States argued Plaintiff had failed to attach an attorney affidavit to the Complaint as is required by 735 ILCS 5/2-622(a). (*See id.* at pp. 10-12). The United States also moved for dismissal of Plaintiff's survival claims based on Plaintiff's failure to exhaust such claims before commencing this lawsuit. (*See id.* at pp. 5-9).

On December 14, 2016, Plaintiff moved for leave to file a Second Amended Complaint (*see* Doc. 23), and the Court granted Plaintiff leave to file her amended pleading the following day. (*See* Doc. 24). Thereafter, Plaintiff filed her Second Amended Complaint (*see* Doc. 25) which is identical to the First Amended Complaint, except Plaintiff has now attached the attorney affidavit required by

2

735 ILCS 5/2-622(a). (*See* Doc. 25-2). The filing of Plaintiff's Second Amended Complaint mooted the United States' Motion directed at Plaintiff's First Amended Complaint. (*See* Doc. 27).

On December 29, 2016, the United States filed an Answer to Plaintiff's Second Amended Complaint. (*See* Doc. 28). In the Answer, the United States asserts the affirmative defense of failure to exhaust with regard to Plaintiff's survival claims asserted in Counts 1 and 3 of the Second Amended Complaint. (*See id.* at p. 13).

### PLAINTIFF'S ADMINISTRATIVE CLAIM AND THE PROBATE MATTER IN PERRY COUNTY, ILLINOIS CIRCUIT COURT

On February 27, 2015, Plaintiff presented an administrative tort claim to the U.S. Department of Health and Human Services ("HHS") on a Standard Form 95. (*See* Doc. 25 at p. 4, ¶ 16; p. 5, ¶ 21; p. 7, ¶ 30; p. 8, ¶ 37) *see also* Declaration of Joan M. Zanzola, Assistant Regional Counsel in the Office of the General Counsel, Department of Health & Human Services, Region V, attached hereto as Exhibit A at ¶ 3 (citing Doc. 15-2). The Standard Form 95 had several attachments, including a January 2015 Order from the Perry County, Illinois Circuit Court, appointing Plaintiff as Special Administrator under 740 ILCS 180/2.1 of the Illinois Wrongful Death Act for purposes of prosecuting a wrongful death action. (*See* Doc. 15-2 at p. 25). Plaintiff had filed a Petition to Appoint Special Administrator on January 20, 2015 (*see* Exhibit B at pp. 3-4, Perry County Circuit Court File, No. 15-P-4), and the Illinois circuit court granted the Petition the following day. (*See* Doc. 15-2 at p. 25).

On March 16, 2015, HHS acknowledged receipt of the claim. Specifically, a letter from HHS states, "[t]his will acknowledge receipt of your client, Jennifer Slapak's administrative tort claim, filed individually and as special administrator of the Estate of James Slapak, deceased, alleging wrongful death of James Slapak as a result of negligent medical care and treatment rendered to Mr. Slapak, from February 25, 2013, through March 26, 2013, by Dr. Patrick Riley, Heather Rice, PA-C and Christopher Rural Health Planning Corporation, located in Christopher, Illinois." *See* Exhibit A at ¶ 4 (citing HHS acknowledgement letter dated March 16, 2015, attached to Exhibit A as Att. 1).

3

With regard to the substance of the claim presented to HHS, in the box labeled "Basis of Claim" on the Standard Form 95, the Form states, "[f]ailure to diagnose pulmonary embolism resulting in death of patient. See attached State Court Complaint, Dripps informational statement, attached medical records and Salmo-Dripps letter of 2015-02-12 claiming FTCA as exclusive remedy for Dr. Patrick Riley, M.D., Heather Rice, P.A., Christopher Greater Area Rural Health Planning Corporation and REA Clinic/DuQuoin." *See id.* at ¶ 3 (citing Doc. 15-2 at p. 2). Furthermore, the Standard Form 95 submitted to HHS lists 5:02 p.m. on March 26, 2013—the date and time of Mr. Slapak's death—as the date and time of the accident. *See id.* Also on the Standard Form 95 are boxes where a claimant is to list a sum certain for "Property Damage," "Personal Injury," or "Wrongful Death" damages sought. *See id.* Plaintiff's Standard Form 95 does not list a sum certain for "Property Damage" or "Personal Injury." The Form lists "$12,000,000" in damages sought for "Wrongful Death." *See id.* In a box with the heading, "Total," Plaintiff again lists $12,000,000. *See id.*

Plaintiff also attached to her Standard Form 95 a state court complaint that she had previously filed in Effingham County, Illinois. The state pleading arises out of the alleged acts that are at issue in this case and contains survival and wrongful death claims against several defendants. (*See* Doc. 15-2 at pp. 3-16). According to Judici.com, Plaintiff's state court action in Effingham County, Illinois has been dismissed without prejudice. *See* Effingham County Circuit Court, No. 15-L-9, *available at* http://judici.com/ (last visited Sept. 21, 2017).

On January 8, 2016, HHS issued a letter stating the agency had denied Plaintiff's claim that "employees of Christopher Rural Health Planning Corporation/DuQuoin Clinic, failed to provide proper care to Mr. Slapak, resulting in his death on March 26, 2013." *See* Exhibit A at ¶ 5 (citing Doc. 25-1). At the time of the denial, neither Plaintiff nor her counsel asserted the administrative claim sought damages for personal injury, bodily injury, or pain or suffering allegedly endured by Mr. Slapak prior to his death. *See id.* at ¶ 6. Additionally, Plaintiff had the right to seek reconsideration of the denial pursuant to 28 C.F.R. § 14.9, but she did not do so. *See id.* at ¶ 7. HHS's

files reflect Plaintiff never amended her administrative tort claim or filed any additional administrative tort claims. *See id.* at ¶ 8.

On June 23, 2016, Plaintiff filed a Petition to Issue Letters of Independent Administration with the Circuit Court in Perry County. *See* Exhibit B at pp. 8-9. The Petition acknowledged Plaintiff's previous appointment as Special Administrator under the Wrongful Death Act. *See id.* The Petition also stated, "[d]uring the course of investigating decedent's death, facts have come to light that suggest the estate may have claims under the Survival Act relating to injuries suffered by decedent immediately prior to his death that would properly be property of the estate." *See id.* On the same date, the circuit court appointed Plaintiff as Administrator. *See id.* at p. 12. On July 7, 2016, Plaintiff commenced this FTCA action that, as previously stated, includes wrongful death and survival claims. (*See* Doc. 1).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may support the motion by citing to materials in the record, including the pleadings, affidavits, and other documents. Fed. R. Civ. P. 56(c)(1); *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010). In assessing whether summary judgment is warranted, the court must construe all evidence, as well as the inferences reasonably drawn therefrom, in the light most favorable to the non-moving party. *Spivey*, 622 F.3d at 822. "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion." *Salvadori v. Franklin School Dist.*, 293 F.3d 989, 996 (7th Cir. 2002).

Furthermore, the Court is well within its discretion to grant a motion for summary judgment and dismiss a claim without prejudice. *See, e.g.*, *Norman v. United States*, No. 2:11-cv-097, 2011 WL 5408479 (N.D. Ind. Nov. 8, 2011). Indeed, "[a]lthough *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust [administrative remedies] prior to filing suit, the

5

issue of exhaustion most often is raised via summary judgment motion, allowing the Court can [sic] consider 'evidence outside the pleadings,' such as affidavits, grievances, responses, appeals, and related documentation." *Bryant v. Nwaobasi*, 13-cv-0411-MJR-SCW, 2014 WL 552794 (S.D. Ill. Feb. 12, 2014) (citing Fed. R. Civ. P. 12(d) (emphasis is original)).

## ARGUMENT

On February 27, 2015, Plaintiff presented HHS with an administrative claim for wrongful death via a Standard Form 95. *See* Exhibit A at ¶¶ 3-4 (citing Doc. 15-2 and Att. 1 to Exhibit A). The Standard Form 95 does not reference a survival claim based on personal injuries Mr. Slapak allegedly suffered before his death or list a sum certain for personal injury damages. *See id.* at ¶ 3 (citing Doc. 15-2 at p. 2). Furthermore, the acknowledgment and denial of claim letters sent by HHS to Plaintiff's counsel reference solely the investigation and denial of a wrongful death claim. *See id.* at ¶¶ 4-5 (citing Att. 1 to Exhibit A and Doc. 25-1). Plaintiff did not question HHS's investigation and denial of solely a wrongful death claim, and Plaintiff never filed an amended or new administrative claim to assert a claim based on the alleged injuries suffered or damages incurred by Mr. Slapak before his death. *See id.* at ¶¶ 6-8. Moreover, at the time Plaintiff filed the administrative claim, she only had authority under Illinois law to prosecute a wrongful death action (*see* Doc. 15-2 at p. 25); she did not seek authority to pursue a survival action until nearly six months after HHS denied the tort claim. *See* Exhibit B at pp. 8-9. These facts establish Plaintiff's failure to present a survival claim to HHS prior to commencing this suit. Plaintiff's failure to present such a claim to HHS means the survival claims asserted in this FTCA action were not exhausted and, therefore, the survival claims must be dismissed.

A.  **Plaintiff did not provide notice to HHS of her intent to pursue a survival action.**

The FTCA states that, "[a]n action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . .

6

.." 28 U.S.C. § 2675(a). "[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for . . . personal injury, or death alleged to have occurred by reason of the incident . . . ." 28 C.F.R. § 14.2(a). "The Court should generously construe an administrative claim form's pleading of the facts, and if 'the claim would have been apparent to a legally sophisticated reader of the claim form, then we will charge the agency with notice of that claim and deem it to have been exhausted.'" *Scally v. Veterans Admin.*, No. 03-CV-4208-JPG, 2005 WL 1498880 at *3 (S.D. Ill. June 23, 2005) (quoting *Palay v. United States*, 349 F.3d 418, 425-26 (7th Cir. 2003)). If, however, the plaintiff has failed to provide an agency with notice of a claim and thereby failed to exhaust that claim, then dismissal of the claim is mandated. *Palay*, 349 F.3d at 425 (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). The exhaustion requirement's purpose "is to facilitate the administrative evaluation of tort claims by the agency whose activity gave rise to the claim and permit settlement of meritorious claims more quickly without litigation." *Warrum v. United States*, 427 F.3d 1048, 1050 (7th Cir. 2005).

Additionally, in an FTCA action, the substantive law of the place where the alleged acts or omissions constituting negligence or malpractice occurred governs; in this case, that is Illinois. *Gilard v. United States*, Case No. 16-cv-537-JPG, 2016 WL 5933410 at *4 (S.D. Ill. Oct. 12, 2016) (citing 28 U.S.C. §§ 1346(b), 2674; *Richards v. United States*, 369 U.S. 1, 10 (1962); *Bowen v. United States*, 570 F.2d 1311, 1315-16 (7th Cir. 1978)). Under Illinois law, an action for personal injury can survive the death of a decedent (a survival claim), and the estate is generally entitled to the same compensatory damages that the decedent would have been entitled to up to the time of death. *Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 354 (2012). A wrongful death claim, on the other hand, is an action in the name of a personal representative of the decedent for the benefit of the widow and next of kin for their pecuniary injuries. *Id.* Because wrongful death and survival claims are two distinct causes of action under Illinois law, Plaintiff must have presented both her survival and

7

wrongful death claims to HHS at the administrative claim stage before such claims may be deemed exhausted for FTCA purposes. *See Scally*, 2005 WL 1498880, at *1-4.

> 1. **Plaintiff's claim and HHS's responses thereto mention only wrongful death.**

In *Scally v. Veterans Administration*, this Court addressed whether a plaintiff had exhausted wrongful death and survival claims before bringing an FTCA action based on medical negligence. The plaintiff's Standard Form 95 submitted to the agency listed the time of incident as the decedent's time of death (which occurred the day after the decedent had undergone surgery), identified the nature and extent of the injury or death as, "Wrongful death of [the decedent]," and left the personal injury damages box blank but stated $1 million dollars as the amount sought for wrongful death. *Scally*, 2005 WL 1498880 at *1-2. In deciding the plaintiff had not exhausted a survival claim, the Court explained the plaintiff "had multiple opportunities to express an intention or desire to seek damages for [the decedent's] suffering before he died." *Id.* at *3. The plaintiff could have included the date of surgery and the decedent's date of death. *Id.* She also could have made minimal reference to pain and suffering when explaining the basis of her claim. *Id.* Furthermore, reasoned the Court, by leaving the damages amount box for personal injury blank, the plaintiff failed "to properly present the claim to the VA." *Id.* (citing *Charlton v. United States*, 743 F.2d 557, 560 (7th Cir. 1984)). The Court concluded that, "[w]hile a legally sophisticated reader of [the plaintiff's] claim form could have realized that a Survival Act claim may have existed, there is no way such a reader could have discerned that [the plaintiff] was making a claim for [the decedent's] pain, suffering or injury." *Id.*

In this case, Plaintiff also had multiple opportunities but failed to express her intent to seek survival damages for personal injuries Mr. Slapak's allegedly experienced before he died. Indeed, in the box labeled "Basis of Claim" on Plaintiff's Standard Form 95, the Form expresses clear intent to pursue solely a wrongful death claim by stating, "[f]ailure to diagnose pulmonary embolism *resulting in death of patient . . . .*" (*See* Doc. 15-2 at p. 2 (emphasis added)). Furthermore, the Standard Form 95 does not reference any injuries Mr. Slapak sustained before his death; lists Mr. Slapak's date and

8

time of death as the date and time of the accident; and lacks a sum certain for personal injury damages but seeks $12,000,000 in damages for wrongful death. (*See id.*).

Plaintiff's Standard Form 95 conspicuously demonstrates her intent to pursue solely a claim based on "failure to diagnose pulmonary embolism *resulting in death of patient*." The agency responded to this demonstrated intent by issuing a letter on March 16, 2015, acknowledging "receipt of [Plaintiff's] tort claim . . . *alleging wrongful death of James Slapak* . . . ." *See* Exhibit A at ¶ 4 (citing Att. 1) (emphasis added). Later, HHS sent a letter, denying that "employees of Christopher Rural Health Planning Corporation/DuQuoin Clinic, failed to provide proper care to Mr. Slapak, *resulting in his death on March 26, 2013*." (*See* Doc. 25-1 (emphasis added)). Plaintiff did not question HHS's denial of solely a wrongful death claim. *See* Exhibit A at ¶¶ 6-7. Instead, she commenced this action on July 7, 2016. (*See* Doc. 1).

      **2.**     **The state court pleading is cited to solely for support of a wrongful death claim.**

The only reference to a survival claim in the documents presented to HHS by Plaintiff is in the Effingham County state court complaint attached to Plaintiff's Standard Form 95. (*See* Doc. 15-2 at pp. 3-16). And indeed, one district court in the Eastern District of Pennsylvania has issued a non-binding opinion that found a plaintiff exhausted a survival claim when the Standard Form 95 was silent on personal injury damages, but a previously filed state court complaint submitted to HHS upon request identified a survival action. *Brunson v. United States*, Civil Action No. 09-03341-PBT, 2010 WL 4158930 (E.D. Pa. Oct. 22, 2010). Unlike the Standard Form 95 in the instant case, however, the Standard Form 95 in *Brunson* included specific allegations of pain and suffering the decedent endured for years as a result of the defendants' alleged failure to diagnose cervical cancer. *See* Exhibit C, Standard Form 95, Case No. 2:09-cv-03341-PBT (E.D. Pa.), Doc. 37-1 at pp. 2, 5. In particular, the "Basis of the Claim" portion of the Standard Form 95 in *Brunson* contained allegations regarding repeated failures by medical professionals to diagnose the decedent's cervical cancer despite complaints of bleeding, persistent anemia, and concerning tests. *Id.* According to the plaintiff's

9

Standard Form 95, it was not until nearly 2 years after treatment and testing had commenced that doctors finally diagnosed the cancer, and the diagnosis only occurred upon the decedent's emergent admission to a hospital for heavy vaginal bleeding and chronic anemia. *Id.* The Standard Form 95 in *Brunson* also alleged the decedent underwent aggressive radiation and concomitant chemotherapy following the diagnosis. *Id.* These allegations along with the state pleading's listing of a survival action made it possible for the agency to discern the plaintiff in *Brunson* was making a claim for personal injuries experienced by the decedent before her death.

Plaintiff's Standard Form 95 contains no allegations that are at all similar to the detailed chronology of care, pain, and injury the decedent in *Brunson* allegedly experienced prior to her death. Moreover, unlike in *Brunson*, Plaintiff's Standard Form 95 does nothing to highlight the survival claims listed in her state court complaint. In fact, Plaintiff's Standard Form 95 cites to her state court complaint solely to support a wrongful death claim. In particular, in the box labeled "Basis of Claim," Plaintiff's Standard Form 95 states, "[f]ailure to diagnose pulmonary embolism *resulting in death of patient*. See attached State Court Complaint . . . ." (*See* Doc. 15-2 at p. 2 (emphasis added)).

If Plaintiff had intended for her state court complaint to serve as notice of her alleged intent to assert a survival claim, there are a number of simple ways she could have made that intent clear. Plaintiff's Standard Form 95 could have stated, "failure to diagnose pulmonary embolism resulting in *personal injuries and* death to patient. See attached State Court Complaint." Plaintiff also could have added the following to her citation to the state court complaint: "See attached State Court Complaint that contains *wrongful death and survival claims.*" Plaintiff, however, did neither. Her failure to make these small additions to the Standard Form 95; her failure to assert allegations consistent with a survival claim; and her failure to list a sum certain as to personal injury damages demonstrate why no legally sophisticated reader could discern Plaintiff had asserted a survival claim to HHS. And because even a legally sophisticated reader could not have discerned Plaintiff's intent to assert a survival claim, HHS had no opportunity to investigate or settle the claim. Without this

opportunity, Plaintiff failed to present her survival claim to HHS before commencing this suit, and her survival claims must be dismissed for failure to exhaust.

### 3. Plaintiff had no authority to present a survival claim to HHS.

Plaintiff's Standard Form 95, its attachments, and correspondence from HHS to Plaintiff's counsel are sufficient to establish no legally sophisticated reader could have discerned Plaintiff sought survival damages. There is, however, yet another reason for concluding Plaintiff never presented a survival claim to HHS. In particular, under 740 ILCS 180/2.1 of the Illinois Wrongful Death Act, an individual may seek appointment as a special administrator to prosecute a wrongful death action. Special administrators are strictly limited to the powers and duties prescribed by 740 ILCS 180/2.1, namely, special administrators under this provision may only prosecute or defend wrongful death suits. *Baez v. Rosenberg*, 949 N.E.2d 250, 259 (2011) (citing 740 ILCS 180/2.1). A special administrator appointed under 740 ILCS 180/2.1, therefore, has no authority to pursue a claim for survival damages on behalf of a decedent's estate. *Id.* To obtain authority to prosecute a wrongful death and survival action in Illinois, an individual may seek appointment by a probate court to act as administrator or executor of a decedent's estate. *See id.*

Plaintiff presented her tort claim to HHS in February 2015. (*See* Doc. 15-2 at p. 2). One month prior, a state court had appointed her Special Administrator under 740 ILCS 180/2.1 of the Illinois Wrongful Death Act. (*See* Doc. 15-2 at p. 25); *see also* Exhibit B at pp. 3-4. As Special Administrator under 740 ILCS 180/2.1, she had authority to prosecute solely a wrongful death action. Plaintiff's tort claim remained pending with HHS from February 2015, until HHS denied the claim in January 2016. (*See* Doc. 15-2 at p. 2 and Doc. 25-1). During that entire period, Plaintiff never pursued appointment as administrator of her husband's estate which would have given her authority to pursue a wrongful death *and* survival action under Illinois law. On June 23, 2016—nearly six months after HHS denied the claim—Plaintiff filed a petition to be named administrator of the estate. *See* Exhibit B at pp. 8-9. In doing so, Plaintiff stated, "[d]uring the course of investigating decedent's

11

death, facts have come to light that suggest the estate may have claims under the Survival Act relating to injuries suffered by decedent immediately prior to his death that would properly be property of the estate." *See id.* On July 7, 2016—two weeks after Plaintiff's appointment as administrator—she filed the original Complaint in this matter which contained claims for survival damages.

HHS treated Plaintiff's administrative claim as one for wrongful death from receipt to denial of the claim. HHS's treatment of the claim as one for wrongful death makes sense given Plaintiff had no authority to prosecute a survival action at any point while the claim remained pending, and Plaintiff's Standard Form 95 contained no information or allegations consistent with a survival claim. Indeed, Plaintiff's appointment as administrator of the estate nearly six months after HHS denied the wrongful death claim and only weeks before commencing this case strongly suggests her desire to pursue a survival claim in federal court arose long after HHS's denial of Plaintiff's tort claim.

### 4. HHS could not have settled a survival claim with Plaintiff.

Plaintiff's lack of authority to pursue a survival action is also problematic in relation to the purposes that underlie the exhaustion requirement. In particular, the purpose of filing an administrative claim is to facilitate conciliation and settlement of the demand. *Kanar v. United States*, 118 F.3d 527, 530-31 (7th Cir. 1997). In support of this purpose, the regulations that define what constitutes an administrative claim and prescribe who may bring a claim provide that the claim must be presented by a person legally entitled to prosecute the claim under the applicable state law. *See* 28 C.F.R. §§ 14.2(a) and 14.3(b)-(c).

Plaintiff, however, had no authority to settle a survival action during the entire pendency of her administrative claim. Accordingly, even if HHS had received sufficient information to decipher Plaintiff's alleged intent to assert a survival claim, Plaintiff's failure to secure the proper authority to pursue the action would have frustrated any settlement negotiations. This is yet another reason to find Plaintiff failed to present a survival claim to the agency.

## **CONCLUSION**

No legally sophisticated reader could have deciphered Plaintiff's intent to pursue a survival claim based on the information presented by Plaintiff to HHS.  As such, HHS had no opportunity to investigate or settle such a claim.  Indeed, even if HHS had notice of such a claim and wanted to settle it, Plaintiff had no authority to reach an agreement on such a claim.  Plaintiff, therefore, has failed to exhaust a survival claim, and the survival claims in her Second Amended Complaint (Doc. 25) must be dismissed without prejudice.

Respectfully submitted,

UNITED STATES OF AMERICA

DONALD S. BOYCE
United States Attorney

*s/ Nicholas J. Biersbach*

NICHOLAS J. BIERSBACH
Assistant United States Attorney
United States Attorney's Office
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
Phone: (618) 628-3700
Fax: (618) 622-3810
E-mail: Nicholas.Biersbach@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2017, I electronically filed the foregoing

**DEFENDANT UNITED STATES OF AMERICA'S
MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFF'S FAILURE TO
EXHAUST SURVIVAL CLAIMS BEFORE COMMENCING SUIT
AND MEMORANDUM IN SUPPORT**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Courtney C. Stirrat
Armbruster, Dripps, Winterscheidt, & Blotevogel, LLC
51 Executive Plaza Court
Maryville, IL 62062
courtneys@adwblaw.com

*s/ Nicholas J. Biersbach*
NICHOLAS J. BIERSBACH
Assistant United States Attorney
United States Attorney's Office
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
Phone: (618) 628-3700
Fax: (618) 622-3810
Email: Nicholas.Biersbach@usdoj.gov