UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JENNIFER SLAPAK, as administrator and personal representative, and individually as surviving spouse of James Slapak, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No.: 16-762<br>)<br>)<br>)<br>)<br>) |

**Plaintiff's Opposition to**
**Defendant's Motion For Summary Judgment**

The Government's position fails because it is clear that Plaintiff Jennifer Slapak ***did*** present administrative claims pursuant to the Illinois Survival Act, as well as for wrongful death, to the United States Department of Health and Human Services ("HHS") in 2015. Thus, its argument that she failed to exhaust the administrative remedies necessary to bring a Federal Tort Claims Act ("FTCA") action under the Illinois Survival Act is without merit.

Plaintiff's State Court Complaint is identified in box 8 of her Form 95 (Doc. 15-2, p. 2) and it begins on the first page attached to the Form 95 filed with the Department of Health and Human Services. Doc. 15-2, pp. 3-18.[1] The State Court Complaint, like the Amended Complaints filed in this Court, states counts under the Survival Act, as well as the Wrongful Death Act. *See* Doc. 15-2, pp. 3-18, *generally*; *see also* Doc. 15-2, pp. 6, 7, 13-15 (Counts III, IV, IX, X and XII, with Counts IX, X and XI asserting Survival Act claims against the same actors identified in the operative complaint here, Doc. 25). Indeed, as the Government itself admits, in the box labeled

---

[1] These documents were authenticated in the Declaration of Joan M. Zanzola. Doc. 46-1, Par. 3.

"Basis of Claim," the form states "[f]ailure to diagnose pulmonary embolism resulting in death of patient. **See attached State Court Complaint**, Dripps information statement, attached medical records, and Salmo-Dripps letter of 2015-02-12 claiming FTCA as exclusive remedy for Dr. Patrick Riley, M.D. … REA Clinic/DuQuoin." Doc. 15-2, p. 2. The cover letter also referred to the state-court complaint. Doc. 15-2, p. 1 ("Attached hereto is Standard Form 95, with the following enclosures in reference to the above:*State Court Complaint filed 1/30/15 …").

The Form 95 and its attachments state explicitly that Plaintiff is seeking damages under **both** the Wrongful Death Act (740 ILCS 180/1) and the Survival Act (755 ILCS 5/27-6) in the sum certain of $12 million. Doc. 15-2, pp. 3-18. Plaintiff sufficiently exhausted her administrative remedies and properly pled her Wrongful Death Act and Survival Act claims under the FTCA. The Court should deny this Motion.

The Government admits that the Form 95 referred to, and attached, a state-court complaint containing counts under the Illinois Survival Act. Thus, the Government's argument that Slapak failed to exhaust the administrative remedies necessary to bring a FTCA action under the Survival Act is without merit. At a minimum, this creates an issue of fact as to whether the Government was on notice of the Survival Act claim. The Government also points to facts that have nothing to do with whether Plaintiff exhausted her administrative remedies. These new "facts" do not change the clear and unambiguous contents of the Form 95 and its attachments.[2]

---

[2] Under the Seventh Circuit's analysis for FTCA exhaustion, the Government's subjective "understanding" has no impact on whether plaintiff exhausted her remedies. *See infra*. But even if the Government's "understanding" of what claims plaintiff was making in her Form 95 has any relevance, that at most creates a question of fact.

*Slapak v. United States* Page 2 of 17

# ARGUMENT

I. **Legal Standard**

Summary judgment is precluded if there is a genuine dispute as to a material fact, or if the movant does not show that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A summary judgment will only be affirmed if, "viewing the facts in the light most favorable to the [nonmovants], and drawing all reasonable inferences in their favor, we conclude that no material issue of fact is disputed and that [the defendants] are entitled to judgment as a matter of law." *Malen v. MTD Products, Inc.*, 628 F.3d 296, 303 (7th Cir. 2010). "In applying this standard we draw all reasonable inferences and resolve factual disputes in favor of the nonmoving party." *Id.* "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence …" *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005).

While Defendant claims the "mere existence of an alleged factual dispute" is insufficient to preclude summary judgment, the context of the case it cites shows that competent evidence of that dispute *is* sufficient. "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. To successfully oppose the motion, the nonmovant must present definite, competent evidence in rebuttal." *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 996 (7th Cir. 2002).

## II. Summary Judgment is Improper Because There Is, At a Minimum, a Genuine Dispute as to Whether Plaintiff Exhausted Her Administrative Remedies

### A. Plaintiff provided notice to HHS of her intent to pursue a Survival Act claim

Plaintiff's State Court Complaint is identified in box 8 of her Form 95 (Doc. 15-2, p. 2) and it begins on the first page attached to the Form 95 filed with the Department of Health and Human Services. Doc. 15-2, pp. 3-18. The State Court Complaint, like the Amended Complaints filed in this Court, states counts under the Survival Act, as well as the Wrongful Death Act. *See* Doc. 15-2, pp. 3-18, *generally*; *see also* Doc. 15-2, pp. 6, 7, 13-15 (Counts III, IV, IX, X and XII, with Counts IX, X and XI asserting Survival Act claims against the same actors identified in the operative complaint here, Doc. 25). Indeed, as the Government itself admits, in the box labeled "Basis of Claim," the form states "[f]ailure to diagnose pulmonary embolism resulting in death of patient. Doc. 15-2 at 2. Counts VII and VIII are captioned "**Survival Act - 40 ILCS 180/1 et seq."** The damages claimed in those counts are clearly personal to the decedent: "As a direct and proximate result of defendant Patrick L. Riley's breach of duty as alleged in paragraph 7, above, James Slapak sustained conscious pain and suffering, disability, and anxiety prior to his death." *Id.* The cover letter also referred to the state-court complaint. Doc. 15-2, p. 1 ("Attached hereto is Standard Form 95, with the following enclosures in reference to the above:*State Court Complaint filed 1/30/15 …").

The Form 95 and its attachments state explicitly that Plaintiff is seeking damages under **both** the Wrongful Death Act (740 ILCS 180/1) and the Survival Act (755 ILCS 5/27-6) in the sum certain of $12 million. Doc. 15-2, pp. 3-18. Plaintiff sufficiently exhausted her

administrative remedies and properly pled her Wrongful Death Act and Survival Act claims under the FTCA.

An administrative claim under the FTCA is to be "interpreted more liberally than a complaint." *Murrey v. United States,* 73 F.3d 1448, 1451 (7th Cir. 1996).

The plain language of the FTCA's exhaustion of remedies provision states that the issue is whether the claim has been presented to the appropriate Federal Agency and then denied in writing; there is nothing therein suggesting every legal theory has to be explicitly presented on **the cover page** of the Form 95:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first **presented the claim** to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675 (West 2016) (emphasis added).

The accompanying regulation refers to the Form 95, without suggesting the Form 95 is limited to the cover page; further, even if the attachments to the Form 95 are not considered part of the Form 95, they would fall within the phrase "other written notification of an incident," which the regulation deems sufficient:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 **or other written notification of an incident, accompanied by a claim for money damages** in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2 (West 2016) (emphasis added).

Furthermore, the cover page of the Form 95 explicitly states that the basis for the claim can be further specified on additional pages. *See* Doc. 15-2, p. 2 ("8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. **Use additional pages if necessary**)"). The Seventh Circuit has held that providing the information required by the Form 95 (which allows "additional pages if necessary") is sufficient:

> By leaving "claim" undefined, Congress invited the Department of Justice to define the word through regulations. The Department has done that, more or less, in 28 C.F.R. § 14.2(a), which provides that "a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." The reference to "Standard Form 95" indicates that a claim, to pass muster, must contain the information required by the form. By examining the form, we can determine how much detail is required and whether Murrey's submission satisfied the requirement.

*Murrey*, 73 F.3d at 1452.

Plaintiff provided HHS with specific wrongful death and survival act claims in the attachments to her Form 95. *See* Doc. 15-2. The Government never indicated that Plaintiff's Form 95 was insufficient because she relied on her state court complaint, which clearly identify survival act claims. *See generally* Doc. 46. And there is nothing in the applicable statutes or regulations stating all of the necessary detail must be provided on the cover page, and cannot be presented in attached documents referred to in the cover page.

The Seventh Circuit has held that an administrative claim for personal injuries or death filed prior to suit satisfies the requirements of 28 U.S.C. § 2675(a). *See Warrum v. United States*, 427 F.3d 1048, 1050 (7th Cir. 2005). As both the Supreme Court and the Seventh Circuit have held, the purpose of the FTCA's exhaustion requirement is to allow the government to investigate

and settle meritorious claims without litigation. See *McNeil v. United States,* 508 U.S. 106, 112, n. 7 (1993); *Warrum*, 427 F.3d at 1051. The crux of the administrative requirement is notice. *See id.* ("This result comports with the exhaustion requirement's purpose of allowing the relevant government agency the opportunity to investigate and settle meritorious claims lodged against it."); *Romulus v. United States,* 160 F.3d 131, 132 (2d Cir.1998) (per curiam) ("A claim must be specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims.").

The Seventh Circuit has explicitly held that it is the entire document that is to be read, not just the Form 95 cover page. Where the additional pages provide notice of the claim, that is "all the notice that the law require[s]":

> **The reader of the "Claims" document submitted by Murrey's estate was not invited to stop with the standard form; nor does 28 C.F.R. § 14.2(a) require that the narrative of facts be confined to the form. The form itself, as we saw, invites supplementation with additional pages. Clearly, the entire "Claims" document was intended to be read, and if it was read the informed-consent claim would leap out at the legally sophisticated reader. The government thus had all the notice that the law required—a conclusion strongly supported by *Rooney v. United States,* 634 F.2d 1238, 1242–43 (9th Cir.1980), a factually similar case.**

*Murrey*, 73 F.3d at 1452–53 (emphasis added). *See also Starr v. United States*, 262 F. Supp. 2d 605, 607–08 (D. Md. 2003) (examining the Form 95, documents provided as attachments, and conversations with the claimants to find that the claimants had exhausted their remedies as to both wrongful death and survivorship claims).

Like *Murrey*, Plaintiff's entire "Claims" document, which contains the state court complaint, clearly and repeatedly states that Plaintiff is seeking damages for both wrongful death and survival. See Doc. 15-2. The Government's attempts to create confusion where none exists cannot change that reality.

1.     **Plaintiff's claim repeatedly mentions both Survival and Wrongful Death.**

As in *Murrey*, discussed *supra,* Plaintiff's entire claim document repeatedly mentions both claims for wrongful death and claims for survivorship. *See* Doc. 15-2 at 3-18; *and see id.* at 13-15 (Survival Act claims in Counts IX, X, XI and XII, asserted against the same defendants identified in the operative complaint, Doc. 25). Plaintiff need not do anything more than give the government notice of her intent to bring both claims. While the government points to its own documents that reference only wrongful death, it does not point to any case showing that the Government's characterization of a claim affects exhaustion. TheGovernment's focus on the cover page of the claim form, to the exclusion of the attachments, conflicts with the Seventh Circuit's decision in *Murrey,* 73 F.3d at 1452–53 ("28 C.F.R. § 14.2(a) [does not] require that the narrative of facts be confined to the form. The form itself, as we saw, invites supplementation with additional pages. Clearly, the entire "Claims" document was intended to be read[.]").

The Government's claim that it failed to perceive there were Survival Act claims, even though the Survival Act was cited by both name and code section (Doc. 15-2 at 13-15), and even though separate damage claims for survivorship were identified (Doc. 15-2 at 13-15) does not affect whether Plaintiff exhausted her remedies. As the Government conceded, the test is whether the claim would put a "legally sophisticated reader" on notice. *See Scally v. Veterans Admin.*, No. 03-CV-4208-JPG, 2005 WL 1498880, at *3 (S.D. Ill. June 23, 2005) *cited in* Doc. 46 at 9-9 ("The Court should generously construe an administrative claim form's pleading of the facts, and if 'the claim would have been apparent to a legally sophisticated reader of the [claim] form, then we will charge the agency with notice of that claim and deem it to have been exhausted.' The facts must simply be sufficient to put the agency on notice to enable it to investigate the claim.").

The requirement of "notice" has been interpreted liberally because the purpose of the statute's notice requirement is to facilitate settlement without litigation, not to allow the Government to win on technicalities.

> A careful scrutiny of the statute's legislative history has persuaded this Court that its purpose is essentially remedial. In its report on the bill, the House Judiciary committee described it as providing for "more fair and equitable treatment of private individuals and claimants." The Senate committee noted that most Federal tort claims were brought against a relatively few agencies, and that these few had developed considerable expertise at settling claims. The report held out the hope that by expanding administrative authority to settle, the bill could allow many potential plaintiffs to avoid the need for expensive and cumbersome litigation. S.Rep.No.1327, 89th Cong., 2d Sess., 1966 U.S.Code Cong. & Ad.News, p. 2515 et seq.
>
> **Given this background, there has been judicial unwillingness to permit the United States to stand on technicalities once a claim has been filed.**

*Locke v. U.S.*, 351 F.Supp. 185, 187 (D. Hawai'i 1972) (emphasis added).

Given this background, courts have routinely held that technical deficiencies are not a jurisdictional bar to claims. *See Owen ex rel. Estate of O'Donnell v. United States*, 307 F. Supp. 2d 661, 665 (E.D. Pa. 2004) ("Thus, as long as the claim and other documentation submitted to the governmental agency provides sufficient notice to enable investigation and settlement, courts have found a technically deficient SF 95 sufficient to confer jurisdiction upon the court."); *Transco Leasing Corp. v. United States*, 896 F.2d 1435, 1442 (5th Cir.1990) (noncompliance with C.F.R. §§ 14.1–14.11 does not jurisdictionally bar claims); *Hilburn v. United States*, 789 F.Supp. 338, 343 (D. Haw. 1992) (minimal notice of claim meets the requirements of 28 U.S.C. § 2675(a) despite technical deficiencies in SF 95); *Champagne v. United States*, 573 F. Supp. 488, 491 (E.D.La.1983)("technical and procedural requirements of the regulations are not always strictly enforced.").

Nothing in the FTCA requires a claimant to state her legal theory of recovery. *Rooney v. United States*, 634 F.2d 1238, 1242 (9th Cir. 1980)("The Government would have us also require a claimant to state his legal theory for recovery. This we cannot do."). The claim need only "provide notification of an incident and injury, must adequately identify the claimant(s), must be filed by the claimant himself or his duly authorized agent or legal representative, and must state a claim for damages in a sum certain." *Id.*, cited *in Murrey*, 73 F.3d at 1453. Having placed the Government on notice of her intent to pursue both survival and wrongful death claims (Doc. 15-2 at 3-18 and 13-15), Plaintiff did not need to take extraordinary steps to ensure that the government read the documents she submitted.

### 2. The State Court pleading was a part of the Form 95 claim.

The Government cites *Brunson v. United States*, No. CIV.A. 09-3341, 2010 WL 4158930, at *4 (E.D. Pa. Oct. 22, 2010), which held, like the Seventh Circuit in *Murrey*, that the claim form includes all attachments filed with it. In *Brunson*, the district court held:

> Plaintiff argues that where a Plaintiff's administrative complaint form is accompanied by additional documents provided to the Defendant that set forth the claims being asserted in a federal lawsuit, the federal court may appropriately review both the face of the administrative form and all relevant attachments to find that the Plaintiff's administrative claims were sufficiently pleaded under the FTCA, and that the court has subject matter jurisdiction to hear the presented claims. This Court agrees with the Plaintiff.

2010 WL 4158930 at *4.

The government attempts to distinguish *Brunson* based on the contests of the Form 95. But, as discussed *supra*, the Seventh Circuit's decision in *Murrey* also held that a plaintiff's claim is not limited to the cover page of the Form itself, but includes all documents attached to the Form. *Murrey*, 73 F.3d at 1453. Even if *Brunson* was distinguishable, *Murray* specifically allows a plaintiff to present her claim on the claim form **and** attachments. *See id*. *Brunson*, like

*Murrey*, recognizes that the important question in analyzing whether a plaintiff has exhausted her administrative remedies is not whether the form has been filled out with exacting precision, but whether the government received notice:

> The Standard Form 95 ("SF 95") complaint, submitted by the Plaintiff to the DHHS, sets forth a claim for wrongful death damages on behalf of the Plaintiff as claimant[8]. The SF 95 is silent on survival damages and on wrongful death damages for the Decedent's survivors. However, this Court relies upon *Owens ex rel. Estate of O'Donnell v. U.S.,* 302 F. Supp.2d 661 (E.D.Pa., March 9, 2004), and finds that the state complaint provided by the Plaintiff in connection with its SF 95, and in response to the Defendant United States' follow up request letters concerning the SF 95, is relevant for consideration on the issue of whether the Defendant United States received actual notice of the claims being asserted in the present case. In *Owens,* the court states that a technically deficient SF 95 can be deemed to constitute a valid claim sufficient to confer jurisdiction on a court in a FTCA action. **The critical question for purposes of subject matter jurisdiction is "whether the government received sufficient notice of the claim to facilitate investigation and settlement."** Thus, the court in *Owens* states that "as long **as the claim and other documentation submitted to the governmental agency provides sufficient notice to enable investigation and settlement, courts have found a technically deficient SF 95 sufficient to confer jurisdiction upon the court**.

*Brunson*, 2010 WL 4158930 at *4 (emphasis added).

The *Brunson* Court further reasoned:

> The state complaint provided to the Defendant United States in connection with the SF 95 clearly sets forth the following claims: (1) negligence and corporate liability against GPHA, Dr. Seema Patel, and Dr. Kathleen Christophe, all agents of the United States, as well as Quest Diagnostics; (2) vicarious liability against GPHA; (3) wrongful death on behalf of the Plaintiff, the Decedent's estate, and Decedent's survivors, William Brunson, Jr. and Jack Mincey, Jr., against GPHA, Dr. Seema Patel, Dr. Kathleen Christophe, and Quest Diagnostics; and (4) survival damages, on behalf of the Plaintiff and the Decedent's estate, against GPHA, Dr. Seema Patel, Dr. Kathleen Christophe, and Quest Diagnostics.
>
> Thus, the **Defendant received clear and actual notice, through the copy of the state complaint that the Defendant received from the Plaintiff on or about April 9, 2009, the precise survival and wrongful death claims that it is asking this Court to dismiss. The state complaint clearly sets forth both claims for survival and wrongful death actions for claimants William Brunson, Jr. and Jack Mincey, Jr., survivors of the Decedent. Because the Defendant received the state complaint**

> **shortly after the SF 95 was filed, the Defendant received sufficient notice to facilitate investigation and settlement**.

*Brunson,* 2010 WL 4158930 at *5 (emphasis added).

The Government's own cited authority clearly states that providing a state court complaint along with a Form 95 provides the actual notice necessary to exhaust a plaintiff's administrative remedies under the FTCA. In the case at bar, the Government does **not** contend that the state court complaint attached to the Form 95 failed to notify the Government of a Survival Act claim. Nor could it, in good faith, when the state court complaint contained two counts denominated "Survival Act" and invoked "40 ILCS 180/1 et seq." by specific citation. Under *Brunson'*s analysis, like *Murrey,* Plaintiff placed the Government on notice of both Wrongful Death and Survival claims when she attached her state court complaint to her Form 95.

    **3.    Plaintiff's Prosecution of Her Survival Claim, Including the Timing of Her Appointment as Administrator, Has No Effect on Whether the Form 95 Provided Notice to the Government**

The Government's position on this point is perplexing. The Government seems to be claiming that it was sophisticated enough to know it could bring a motion to dismiss the Survival Act claims on some kind of "lack of standing" basis. But if it knew the Survival Act claims were claims Plaintiff intended to bring, by its review of the attached state court complaint, and it knew how to move to dismiss them, then it was obviously on notice those Survival Act claims were being asserted.

The Government's reliance on Plaintiff's probate court filings misses the boat. The Government argues, without citation to any authority, that Plaintiff's subsequent filing for letters of administration in the probate court of Perry County, Illinois somehow suggests that she failed to provide notice to the government of her survival claim. Yet Plaintiff's survival claim, filed in

state court, and attached to the Form 95, and referenced on the cover page of the Form 95, predates both her Form 95 and any filings in the probate court. The Form 95 and its cover letter, served on February 19, 2015, referred to an attached state-court complaint that had been filed on January 30, 2015. Doc. 15-2, p. 1 ("Attached hereto is Standard Form 95, with the following enclosures in reference to the above:*State Court Complaint filed 1/30/15 …"); *id.* at 2 ("See attached State Court complaint …"); Doc. 15-2, pp. 3-18 (state court complaint).

The timing of when Plaintiff filed for letters of administration, in addition to her appointment of special administrator, has nothing to do with the notice she provided to the government of her intent to pursue damages for survivorship.

Nothing in the statements made to the probate court affect the notice provided by Plaintiff under the FTCA, when Plaintiff need not do anything more than give the government notice of her intent to seek damages for her claims; whether a defendant could have successfully brought a motion to dismiss the Survival Act claims in the state court on a technicality such as improper status is immaterial to whether the Government was given adequate notice of those claims.[3] *Murrey*, 73 F.3d at 1453 (holding that a claim need only provide notice of an incident and injury, identify the claimant, and state a claim for damages in a sum certain.). For further authority, *see Charlton v. U.S.*, 743 F.2d 557, 561 (7th Cir. 1984) ("All that § 2675 requires is minimal notice

---

[3] Notably, Illinois courts have repeatedly allowed litigants to amend survival act or wrongful death complaints, with the amendments relating back to the original filings, where it was apparent the plaintiff lacked proper capacity as of the original filing. *See Boatmen's National Bank of Belleville v. Direct Lines, Inc.*, 167 Ill. 2d 88, 102, 105 (holding ninth amended complaint, which was the first one to properly name only the decedent's husband as her next of kin, related back to the date of the filing of the original complaint, even though the statute of limitations had run by the time of its filing); *In re Estate of Mankowski*, 2014 IL App (2d) 140154, ¶¶ 49, 56 (allowing appointment of plaintiff as special administrator after statute of limitations had run).

and a request for a "sum certain"; there is no other exhaustion requirement in the statute itself."); *Dawson ex rel. Estate of Dawson v. U.S.*, 333 F. Supp. 2d 488 (D. S.C. 2004) ("As was observed in *Knapp v. United States*, 844 F.2d 376 (6th Cir.1988), the requirement of 28 C.F.R. § 14.3(c) is non-jurisdictional in nature and the failure to file a survival or wrongful death claim under the FTCA by the person authorized by state law does not defeat the district court's subject matter jurisdiction."); *and see Zywicki v. United States*, No. CIV.A. 88–1501–T, 1991 WL 128588, *2 (D.Kan. June 20, 1991) (noting the Third, Fifth, Sixth, Seventh, Ninth, and the District of Columbia circuits have "reasoned that the only jurisdictional requirements of the FTCA administrative process are that the claimant give the agency adequate written notice of the claim and the underlying facts and that the claimant place a value on the claim").

The Government argues that Plaintiff's probate filings failed to provide notice to HHS because at the time Plaintiff did not have legal authority to settle the claims. The Government again conflates the statutory requirements for filing suit with the requirements for filing a claim. While the Government points to the regulations for presenting a claim under the FTCA, it misinterprets the meaning of the word authority, which refers to the authority of the agent retained to "present a claim" on behalf of the claimant not the authority of that agent to file a civil suit on behalf of the claimant:

> (a) For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied **by evidence of his authority to present a claim on behalf of the claimant** as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2 (emphasis added).

Nothing in 28 C.F.R. § 14.2 requires a claimant to have the statutory authority necessary to file suit before presenting a claim. Further, Plaintiff presented evidence of her authority to file suit - the attached Order gave her authority to file the Complaint (ECF15-2 at p. 25), and the Government has not cited any document from the state court case indicating that authority was ever deemed invalid. The Seventh Circuit, in a case cited by Defendant, has stated that would have been close enough, so long as Plaintiff complied with any requests for further demonstrations of authority.

> How, then, does Kanar's submission stand? Did omission of evidence that Long had authority to represent Kanar frustrate the process of conciliation and settlement that the administrative demand is supposed to initiate? An agency might have overlooked the omission and assumed that a lawyer would have a power of attorney—but this agency did not. The omission was noted, and Long was instructed to forward the necessary evidence. Had he promptly submitted what the agency called for, we would be inclined to treat his original papers as close enough to a "claim" to count.

*Kanar v. U.S.*, 118 F.3d 527,531 (7th Cir. 1997)

Here, the Government never requested further evidence of Plaintiff's authority to file a civil suit on behalf of the decedent.

Further, nothing in the statute, regulations, or case law suggests that the authority of the claimant at the time the claim is filed has any effect whatsoever on the claimant's ability to exhaust her remedies. Plaintiff's status as a special administrator and not a personal representative and a special administrator at the time the Form 95 was filed was an oversight by Plaintiff's counsel that was corrected by the time Plaintiff filed her complaint in this case. While the Government now suggests this oversight affects whether Plaintiff exhausted her remedies, it did not raise this question a single time before filing the motion for summary judgment. This failure further dooms the Government's position.

Rule 9(a)(1)(A) says that a plaintiff need not plead "a party's capacity to sue or be sued". Rule 9(a)(2) says that "To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." The Seventh Circuit has held that the failure to object at the earliest opportunity to a plaintiff's capacity to sue waives the objection:

> The phrase "by specific negative averment" means that a party must raise lack of capacity to sue in an appropriate pleading or amendment to avoid waiver. *MTO Maritime Transp. Overseas v. McLendon Forwarding Co.*, 837 F.2d 215, 218 (5th Cir.1988) (recognizing that "[i]t is settled law that failure specifically to plead capacity waives the right to object") (footnote omitted); *Garbincius v. Boston Edison Co.*, 621 F.2d 1171, 1174 (1st Cir.1980); *Summers v. Interstate Tractor and Equipment Co.*, 466 F.2d 42, 49 (9th Cir.1972); *Marston v. American Employers Ins. Co.*, 439 F.2d 1035, 1041 (1st Cir. 1971) (Coffin, J.) (noting that even where the defendant denies the plaintiff's capacity in accordance with Rule 9(a), defendant failed to satisfy the additional requirement that the specific negative averment must be explained by the inclusion of supporting particulars). Moreover, Rule 9(a) also requires "[e]arly waiver [by court ruling] * * * to give meaning to the requirement * * * that capacity must be put in issue 'by a specific negative averment,' " and capacity "objections [are] waived after pleadings." 5 Wright & Miller, Federal Practice and Procedure: Civil 2d § 1295 (1989 Supp.) (collecting supporting cases).3 Moore's Federal Practice agrees. As stated there, "failure to raise the issue of capacity by a direct negative averment results in a waiver of the defense." 2A Moore's Federal Practice ¶ 9.02.

*Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.*, 929 F.2d 343, 345–46 (7th Cir. 1991).

While Rule 9(a) was amended in 2007[4], the "changes are intended to be stylistic only." Committee Notes On Rules - 2007 Amendment; *and see Delta Consulting Group, Inc. v. R. Randle Const., Inc.,* 554 F.3d 1133, 1140 (7th Cir. 2009) ("The lack of capacity to sue or be sued is a defense that must be pleaded with specificity or it is waived.") (post-amendment case).

---

[4] Substituting "specific denial" for "specific negative averment".

In this case, the Government's motion to dismiss (Doc. 15) filed November 15, 2016 failed to allege lack of capacity to sue. The Government's Answer (Doc. 28) filed December 29, 2016, set forth seventeen separately numbered "Affirmative Defenses" but failed to include lack of capacity to sue. The Seventh Circuit's decisions in *Wagner Furniture Interiors* and *Delta Consulting Group*, both *supra*, require the Government's belated assertion of lack of capacity to be deemed waived.

### III.   Conclusion

Plaintiff exhausted her administrative remedies when she submitted her Form 95 and attachments, which clearly and explicitly identify a claim for wrongful death and a claim for survivorship. The Court should deny the Government's Motion for Summary Judgment.

Respectfully submitted,

ARMBRUSTER, DRIPPS,
WINTERSCHEIDT & BLOTEVOGEL, LLC

By: /s/ Roy C. Dripps
Roy C. Dripps #6182013
Courtney C. Stirrat #6305084
51 Executive Plaza Court
Maryville, IL  62062
Phone:      618/208-0320
Fax:          800/927-1529
royd@adwblaw.com
courtneys@adwblaw.com
***ATTORNEYS FOR PLAINTIFF***

### CERTIFICATE OF SERVICE

All parties of record have been served with a copy of this motion by operation of this court's electric filing system on November 16, 2017.

/s/ Roy C. Dripps